DANIAL O. LAIRD, M.D., J.D.
Nevada Bar No. 11831
Dan@LairdLaw.com
**LAIRD LAW PLLC**
8991 West Flamingo Road, Suite C
Las Vegas, Nevada 89147
(702)202-3091 (Telephone)
(702)202-1992 (Facsimile)
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **CAROLINE KING, Individually, and as Special Administratrix of the ESTATE OF WILLIAM NESBIT KING, WILLIAM DEE KING, Individually, and TENESHA KING, Individually** | Case No. |
| Plaintiffs, | |
| vs. | |
| **THE UNITED STATES OF AMERICA,** | |
| Defendant. | |

## PLAINTIFFS' ORIGINAL COMPLAINT

NOW COME the Plaintiffs, Caroline King, Individually, and as Special Administratrix of the Estate of William Nesbit King, William Dee King, Individually, and Tenesha King, Individually, by and through their attorneys, Laird Law PLLC, and for their Complaint against Defendant states as follows:

## PARTIES

1. At all times relevant, Caroline King, William Dee King, and Tenesha King were residents of Clark County, State of Nevada.

2. At all times relevant, Decedent William Nesbit King was a resident of Clark County, State of Nevada, who died in Clark County, State of Nevada on December 1, 2019.

3. Plaintiff Caroline King was lawfully married to Decedent William Nesbit King at the time of his death. William Nesbit King was the beloved husband of Caroline King for over 50 years.

4. Plaintiff Caroline King is the surviving spouse and a lawful individual heir of William Nesbit King. William Dee King is the natural son and an individual heir of William Nesbit King. Tenesha King is the natural daughter and an individual heir of William Nesbit King.

5. A Court Order appointing Plaintiff Caroline King as Special Administratrix of the Estate of William Nesbit King was filed on January 13, 2020. Letters of Special Administration appointing Caroline King as Special Administratrix of the Estate of William Nesbit King issued on March 13, 2020.

6. Defendant, the UNITED STATES OF AMERICA, may be served by delivering a copy of the Summons and Complaint to the United States Attorney for the District of Nevada.

## JURISDICTION, SERVICE, AND VENUE

7. This Federal District Court has subject-matter jurisdiction over this lawsuit under U.S. Const., Art. 3, §2, cl. 1. and 28 U.S.C. §1346(b), 2671-80, commonly known as the Federal Tort Claims Act, which vests exclusive subject-matter jurisdiction of the Federal Tort Claims Act in Federal District Court. Venue of this suit is proper herein because the events or omissions giving rise to these claims occurred in Las Vegas in the District of Nevada under 28 U.S.C. §1391.

8. The United States of America may be served with process in accordance with Rule 4(I) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the United States Attorney Nicholas A. Trutanich, United States Attorney for the District of Nevada, by certified mail, return receipt requested at his office:

> U.S. Attorney's Office District of Nevada
> ATTN: Civil Process Clerk
> 501 Las Vegas Boulevard South
> Suite 1100
> Las Vegas, NV 89101

9. Service is also affected by serving a copy of the Summons and complaint on Merrick Garland, Attorney General of the United States, by certified mail, return receipt requested at:

> The Attorney General's Office
> U.S. Department of Justice
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

## CONDITIONS PRECEDENT

10. Plaintiffs plead pursuant to 28 U.S.C. §§ 2672 and 2675(a) that the claims set forth meet all jurisdictional prerequisites, including timely administrative presentment. Plaintiff timely presented these claims in writing to: 1) William J. Caron, Director, VA Southern Nevada Healthcare System, 6900 North Pecos Road, North Las Vegas, Nevada 89085; 2) Office of Chief Counsel, San Francisco VA Medical Center, 4150 Clement Street, San Francisco, California 94121; and 3) Office of General Counsel, Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, DC 20420. These administrative claims were received on or about August 5, 2020 and receipt of the same was acknowledged on August 20, 2018. Defendant failed to make a final disposition of this claim within six months after it was presented. To date, the United States has not made a final disposition, in writing and by certified mail, of the Plaintiffs claims.

11. Accordingly, pursuant to 28 U.S.C. § 2675(a), Plaintiffs have complied with all jurisdictional prerequisites and conditions prior to the commencement and prosecution of this suit.

12. Plaintiffs' Standard Form 95, administratively presented to the United Stated on behalf of CAROLINE KING, Individually and as Special Administratrix of the

ESTATE OF WILLIAM NESBIT KING , WILLIAM DEE KING, Individually, and TENESHA KING, Individually, stated a "sum certain" of one hundred million dollars ($100,000,000.00).

## FACTS

13. Plaintiffs reallege and incorporate herein by reference Paragraphs 1- 12 and all other facts and allegations of this Complaint, as though fully restated herein.

14. Decedent William Nesbit King was a Veteran who courageously served in the U.S. Navy from 1966 to 1970, including the Vietnam Conflict.

15. William Nesbit King was a patient of the Michael O'Callaghan Federal Medical Center (MOFMC) and of the VA Southern Nevada Healthcare System.

16. In 2016, William Nesbit King was a VA Southern Nevada Healthcare System patient with a complex medical history, including a long history of ischemic heart disease, mitral valve replacement, and paroxysmal atrial fibrillation. He had previously undergone placement of an Automatic Implantable Cardiac Debribrillator (AICD). He also had a history of Type II Diabetes Mellitus and hyperlipidemia.

17. During his course of treatment at the VA Southern Nevada Healthcare System, William Nesbit King was never offered or seriously evaluated for a cardiac transplant; nor was he ever offered a Left Ventricular Assist Device (LVAD). Instead, William Nesbit King was relegated to "medical management" of his cardiac condition by VA Southern Nevada Healthcare System.

18. Upon information and belief, on or around April 22, 2019, William Nesbit King was admitted to the MOFMC with a diagnosis of Congestive Heart Failure (CHF). As part of his cardiac evaluation at MOFMC, he was to undergo an ultrasound of the heart called an echocardiogram.

19. Upon information and belief, in April 2019, physicians at the MOFMC determined that William Nesbit King was too frail and too ill to tolerate the analgesia and sedation that was necessary for a transesophageal echocardiogram (TEE).

Therefore, he underwent a transthoracic echocardiogram (TTE) that did not require sedation or analgesia. William Nesbit King was able to stay completely awake for the duration of the TTE at MOFMC. Upon information and belief, William Nesbit King underwent a TEE at MOFH on or around April 22, 2019 without complication. His cardiac ejection fraction at that TEE was determined to be very low, at 16 (sixteen) percent. The results of the April 2019 TEE were provided to or were available to VA Southern Nevada Healthcare System.

20. On or around May 6, 2019, WILLIAM NESBIT KING was admitted to VA Southern Nevada Healthcare System with an exacerbation of Congestive Heart Failure (CHF).

21. On or around May 6, 2019, a cardiac fellow, Michael R. Gardner, MD and a cardiology attending, Nicholas Kalayeh, MD, with VA Southern Nevada Healthcare System, ordered the administration of 100 mcg of the very potent opioid medication, fentanyl, to William Nesbit King. They then ordered the administration of 3 mg of the benzodiazepine midazolam, also intravenously.

22. The Black Box Warning is the strongest possible warning that the Food and Drug Administration (FDA) can place on medications. At all times relevant hereto, pharmaceutical grade fentanyl came with an FDA-mandated Black Box Warning, warning practitioners about the very dangerous respiratory depression caused by the interaction between opioids (fentanyl) and benzodiazepines (midazolam):

**WARNING: ADDICTION, ABUSE, AND MISUSE; LIFE THREATENING RESPIRATORY DEPRESSION; CYTOCHROME P450 3A4 INTERACTION; and RISKS FROM CONCOMITANT USE WITH BENZODIAZEPINES OR OTHER CNS DEPRESSANTS**

**...Concomitant use of opioids with benzodiazepines or other central nervous system (CNS) depressants, including alcohol, may result in profound sedation, respiratory depression, coma, and death. Reserve concomitant prescribing for use in patients for whom alternative treatment options are inadequate; limit dosages and durations to the minimum required; and follow patients for signs and symptoms of respiratory depression and sedation...**

23. Similarly, at all times relevant hereto, the benzodiazepine midazolam came with an FDA-mandated Black Box Warning, warning practitioners about the very dangerous respiratory depression caused by the interaction between opioids (fentanyl) and benzodiazepines (midazolam).

24. Pursuant to the medical records, upon co-administration of the potent opioid, fentanyl, and the benzodizepine, midazolam, on May 6, 2019, William Nesbit King suffered respiratory arrest, oxygen desaturation, hypoxia, and cardiac arrest. Reversal agents for opioids and benzodiazepines were administered but William Nesbit King remained in full cardiac arrest for several minutes and suffered severe anoxic brain damage.

25. Following the attempt to sedate William Nesbit King for a TEE on or around May 6, 2019, William Nesbit King remained in a persistent vegetative state until he died on or around December 1, 2019.

## CAUSE OF ACTION
### (Federal Tort Claims Act - Professional Negligence)

26. Plaintiffs reallege and incorporate herein by reference Paragraphs 1 - 25 and all other facts and allegations of this Complaint, as though fully restated herein.

27. Defendant's employees and/or agents owed a duty to act in the same manner as an ordinarily prudent physicians, fellows, residents, nurses, medical staff, nursing staff, and other providers, acting in the same or similar circumstance in caring for, diagnosing and treating patient like William Nesbit King.

28. Defendant held itself and its employees and agents out to William Nesbit King as providers of health care with the requisite and competent medical personnel, nursing personnel, and staff to properly care for Plaintiffs' Decedent.

29. Defendant, by and through its VA physicians, nurse practitioners, residents, fellows, cardiologists, agents and employees, owed William Nesbit King a duty to provide

1    reasonable and ordinary medical care and treatment to him in compliance with the
2    standard of care required of similar healthcare providers. (See Declaration of Board
3    Certified Anesthesiologist Jordan Kuppinger, MD, attached hereto as Exhibit 1).

4  30. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA
5      nursing and medical staff breached the standard of care by administering a
6      substantial overdose of the potent opioid, fentanyl, and the benzodiazepine,
7      midazolam, intravenously to William Nesbit King on or around May 6, 2019.

8  31. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA
9      nursing and medical staff breached the standard of care by failing to recognize the
10     synergistic respiratory depressant action of fentanyl and midazolam, when
11     administering the same to William Nesbit King on or around May 6, 2019.

12 32. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA
13     nursing and medical staff breached the standard of care by failing to properly and
14     timely ventilate and oxygenate William Nesbit King when he suffered a hypoxic
15     respiratory and cardiac arrest on or around May 6, 2019.

16 33. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA
17     nursing and medical staff breached the standard of care by failing to properly
18     consult and utilize the services of a Physician Anesthesiologist or Certified
19     Registered Nurse Anesthetist (CRNA) when heavily sedating a frail elderly man
20     with a cardiac ejection fraction of less than 20 percent, William Nesbit King, on or
21     around May 6, 2019.

22 34. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA
23     nursing and medical staff breached the standard of care by attempting to perform
24     both sedation/ analgesia and a procedure (TEE) simultaneously on a frail elderly
25     patient with a cardiac ejection fraction of less than 20 percent, William Nesbit King,
26     on or around May 6, 2019. It was foreseeable, predictable, and preventable that
27     administering 100 mcg of fentanyl and 3 mg of midazolam, intravenously, to such

1 a patient would result in respiratory arrest.

2 35. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA nursing and medical staff breached the standard of care by failing to properly manage the airway of William Nesbit King when he suffered a hypoxic respiratory and cardiac arrest on or around May 6, 2019.

36. VA Cardiology Fellow, Michael R. Gardner, MD, Nicholas Kaylayeh, MD, and VA nursing and medical staff breached the standard of care by failing to properly follow Adult Cardiac Life Support (ACLS) Protocols when William Nesbit King suffered a hypoxic respiratory and cardiac arrest on or around May 6, 2019.

37. As a result in all of the breaches in the standard of care listed above, Decedent William Nesbit King experienced severe pain, extreme suffering, emotional distress, mental anguish, oxygen desaturation, respiratory arrest, hypoxia, catastrophic anoxic brain damage, cardiac arrest, pulseless electrical activity, and death.

38. As a result of all of the breaches in the standard of care listed above, the Estate of William Nesbit King has incurred medical expenses, hospital expenses, lost future income, loss pension income, lost disability income, and funeral/ burial expenses in an amount in excess of $75,000.00.

39. As a direct and proximate result of the actions of the Defendants, and each of them, as herein alleged, PLAINTIFFs have been forced to endure great pain, suffering, emotional distress, loss of companionship, loss of society, loss of guidance, loss of financial support, loss of probable support, loss of earnings, loss of services, loss of love, and loss of advice in an amount in excess of $75,000.00.

40. As a further and direct and proximate result of the actions of the Defendants, and each of them, as herein alleged, Plaintiffs claim all damages allowed pursuant to NRS 41.085 and all other damages to which they are entitled pursuant to other applicable state and federal law(s).

///

41. It has become necessary for Plaintiffs to retain the services of attorneys to prosecute this action, and Plaintiffs are therefore entitled to attorneys' fees and costs and costs of suit incurred herein.

## **REQUEST AND PRAYER FOR RELIEF**

Plaintiffs request the Defendant be cited to appear and answer herein: that upon final trial and hearing, the Plaintiffs have a judgment against the Defendant for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiffs may show themselves entitled to and to which the Court finds them deserving.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant and award Plaintiff the following:

a. Actual damages in an amount in excess of $75,000.00;

b. Costs of suit;

c. Pre-judgment and post-judgment interest, as provided by law;

d. All other relief the Court deems appropriate.

Dated this the Sixth day of July, 2021.

**LAIRD LAW PLLC**

By: *Danial Laird*

**DANIAL LAIRD, ESQ.**
Nevada Bar No. 11831
8991 West Flamingo Road, Suite C
Las Vegas, NV 89147
Attorneys for Plaintiffs